Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:  516.741.4977
Facsimile:   516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK GIDDINGS,<br><br>                    Plaintiff,<br><br>vs.<br><br>SPRAGUE RESOURCES LP, SPRAGUE RESOURCES GP, LLC, STEPHEN M. HENDEL, DAVID C. GLENDON, BETH A. BOWMAN, C. GREGORY HARPER, JASON T. LEMME, SCOTT LEVY, JONATHAN GUY MERISON, STEPHEN M. SEMLITZ, and JOHN A. SHAPIRO,<br><br>                    Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Mark Giddings ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this unitholder action against Sprague Resources LP ("Sprague" or the "Partnership") and the Board of Directors of Sprague Resources GP, LLC (the "Board" or the "Individual Defendants," and collectively with the Partnership, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a

- 1 -

result of Defendants' efforts to sell the Partnership to Sprague HP Holdings, LLC, and affiliate of Hartree Partners, LP ("Parent" or "Hartree") as a result of an unfair process, and to enjoin an upcoming unitholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an June 2, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Partnership Agreement"). Under the terms of the Partnership Agreement, Hartree will acquire all the outstanding units of Sprague common units for $19.00 per unit in cash. As a result, Sprague will become an indirect wholly-owned subsidiary of Hartree.

3. Thereafter, on July 7, 2022, Sprague filed a Information Statement on Form PREM14C (the "Information Statement") with the SEC in support of the Proposed Transaction.

4. The Information Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" in which no market check for potentially interested third parties was conducted.

5. In addition, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Partnership significant and immediate benefits with no thought to Plaintiff, as well as the Partnership's Common Unitholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Partnership Board Members and executive officers will be able to exchange all Partnership equity awards for the merger consideration.

6. Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Partnership significant and immediate benefits with no thought to Plaintiff, as well as the Partnership's Common Unitholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the

Proposed Transaction, Partnership Board Members and executive officers will be able to exchange all Partnership equity awards for the merger consideration.

7. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Information Statement on July 7, 2022 with the SEC in an effort to convince Plaintiff to vote in favor of the Proposed Transaction. The Information Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Information Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Sprague, provided by Sprague management to the Board and the Board's financial advisor Jefferies, LLC ("Jefferies"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Jefferies if any, and provide to the Partnership and the Board.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9. Plaintiff is a citizen of Tennessee and, at all times relevant hereto, has been a Sprague unitholder.

10. Defendant Sprague one of the largest independent wholesale suppliers of energy and materials handling services in the Northeast. Sprague is incorporated in Delaware and has its principal place of business at 185 International Drive, Portsmouth, NH 03801. Units of Sprague common units are traded on the NYSE under the symbol "SRLP".

11. Defendant Stephen M. Hendel ("Hendel") has been a Director of the Partnership at all relevant times. In addition, Hendel serves as the Chairman of the Partnership's Board.

12. Defendant David C. Glendon ("Glendon") has been a director of the Partnership at all relevant times.

13. Defendant Beth A. Bowman ("Bowman") has been a director of the Partnership at all relevant times.

14. Defendant C. Gregory Harper ("Harper") has been a director of the Partnership at all relevant times.

15. Defendant Jason T. Lemme ("Lemme") has been a director of the Partnership at all relevant times.

16. Defendant Scott Levy ("Levy") has been a director of the Partnership at all relevant times.

17. Defendant Jonathan Guy Merison ("Merison") has been a director of the Partnership at all relevant times.

18. Defendant Stephen M. Semlitz ("Semlitz") has been a director of the Partnership at all relevant times.

19. Defendant John A. Shapiro ("Shapiro") has been a director of the Partnership at all relevant times.

20. Defendant Sprague Recourses GP, LLC ("GP") is the general partner of Sprague. GP provides natural gas, electricity, and heating oil to customers throughout the United States.

21. Defendants identified in ¶¶ 11 - 19 are collectively referred to as the "Individual Defendants."

22. Non-Party Hartree is a leading investment firm.

**JURISDICTION AND VENUE**

23. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Partnership officers or directors, has extensive contacts within this District; for example, the Partnership's stock trades on the New York Stock Exchange which is headquartered in this District.

**SUBSTANTIVE ALLEGATIONS**

*Partnership Background*

26. Sprague Resources LP is one of the largest independent wholesale suppliers of energy and materials handling services in the Northeast. Sprague Resources LP offers an extensive range of liquid distillate (e.g., heating oil and diesel), gasoline and residual fuel products and services as well as competitive natural gas supply and materials handling capabilities. Sprague Resources LP's customers benefit from its extensive network of owned and operated terminals throughout the Northeast and the partnership's investment in customized products and solutions.

27.     The Partnership's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success. For example, in the May 5, 2022 press release announcing its 2022 Q1 financial results, the Partnership highlighted that net sales were $1,813.3 million for the first quarter of 2022, compared to net sales of $1,036.1 million for the first quarter of 2021.

28.     Speaking on the positive results, CEO defendant Glendon. said, "Sprague's outstanding first quarter results were driven by terrific execution across our portfolio of businesses. Global tightness in commodity markets created opportunities to leverage our supply and logistics expertise."

29.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Sprague. Clearly, based upon the positive outlook, the Partnership is likely to have tremendous future success.

30.     Despite this upward trajectory, the Individual Defendants have caused Sprague to enter into the Proposed Transaction without providing requisite information to Sprague unitholders such as Plaintiff.

*The Flawed Sales Process*

31.     As detailed in the Information Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Partnership by any means possible.

32.     Of significant import, it does not appear that a market check for potentially interested third parties was conducted by the Board or by anyone on its behalf during the sales process. Rather, it appears that the goal from the outset was a transaction with Hartree, with the

Information Statement indicating that such talks had existed between the Partnership and Parent for an extensive period of time.

33. Notably, the Proposed Transaction is a foregone conclusion, with Hartree owning a 74.5% of the outstanding common units. Unfortunately, the Preliminary Proxy fails to account for this issue because it provides no provision for minority unitholder rights.

34. The Information Statement is silent as to the nature of any existing confidentiality agreement entered into between the Partnership and Hartree and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Information Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

35. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

36. On June 2, 2022, Sprague and Hartree issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **PORTSMOUTH, N.H., June 02, 2022 (GLOBE NEWSWIRE)** -- Sprague Resources LP ("Sprague") (NYSE: SRLP) today announced that it has entered into a definitive agreement and plan of merger (the "Agreement") pursuant to which an affiliate of Hartree Partners, LP ("Hartree") will acquire all of the outstanding common units of Sprague not already owned by Hartree and its affiliates (the "Common Units"). The Agreement follows the offer made by Hartree on January 11, 2022 to acquire the Common Units.
>
> The Agreement provides for an all-cash transaction, whereby each holder of the Common Units will receive $19.00 per common unit owned, representing a 27.3% premium to the closing price of the common units on January 10, 2022, the day prior to Hartree's offer, and an 18.9% premium to the closing price of the common units as of June 1, 2022.

> The Board of Directors of Sprague Resources GP LLC, the general partner of Sprague (the "GP Board"), delegated to a conflicts committee of the GP Board (the "Sprague Conflicts Committee"), consisting solely of the GP Board's three independent directors, the authority to review, evaluate, negotiate and approve the transaction on behalf of the GP Board. The Sprague Conflicts Committee, after evaluating the transaction with its legal counsel and independent financial advisor, unanimously approved the Agreement and determined it to be in the best interests of Sprague and Sprague's unitholders unaffiliated with Hartree.
>
> Under Sprague's partnership agreement, the transaction is required to be approved by the holders of a majority of the outstanding common units. An affiliate of Hartree owns approximately 74.5% of the outstanding common units, and immediately following the execution of the Agreement, that affiliate of Hartree delivered to Sprague a written consent approving the transaction. As a result, the transaction has been approved by the limited partners of Sprague, and Sprague will not hold a meeting of its unitholders to approve the transaction. Sprague will distribute an information statement to its unitholders describing the terms and conditions of the transaction. Upon closing of the transaction, Sprague will be a wholly owned subsidiary of Hartree and Sprague's common units will cease to be publicly traded.
>
> The transaction is expected to close prior to the end of Q3 2022, subject to customary closing conditions.

*Potential Conflicts of Interest*

37. The breakdown of the benefits of the deal indicate that Sprague insiders are the primary beneficiaries of the Proposed Transaction, not the Partnership's public Unitholders such as Plaintiff. The Board and the Partnership's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public Unitholder of Sprague.

38. Partnership insiders, currently own large, illiquid portions of Partnership units all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not unitd amongst Plaintiff and other public Unitholders of the Partnership. Notably, while the Information Statement provides the following information, it fails to account for the cash consideration which such units will be exchanged for:

| Name of Beneficial Owner | Common Units Beneficially Owned | Percentage of Common Units Beneficially Owned |
|---|---|---|
| Sprague HP Holdings, LLC | 19,548,849 | 74.5% |
| Hartree Partners, LP | 19,548,849 | 74.5% |
| Hartree Partners GP, LLC | 19,548,849 | 74.5% |
| Stephen M. Hendel | — | * |
| Stephen M. Semlitz | — | * |
| Jonathan Guy Merison | — | * |
| Scott A. Levy | 45,135 | * |
| Jason T. Lemme | — | * |
| C. Gregory Harper | 26,615 | * |
| Beth A. Bowman | 17,718 | * |
| John A. Shapiro | 2,764 | * |
| David C. Glendon | 123,459 | * |
| David C. Long | 30,050 | * |
| Thomas E. Flaherty | 41,991 | * |
| Brian W. Weego | — | * |
| Steven D. Scammon | 38,908 | * |
| l executive officers and directors of our General Partner as a group (18 persons) | 413,153 | 1.6% |

39. Additionally, Partnership insiders, currently own large amounts of partnership options, restricted unit units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not unitd amongst Plaintiff and other public Unitholders of the Partnership. Notably, while the Information Statement

provides some information, it does not provide the specific amount of merger consideration such options will be exchanged for upon the consummation of the Proposed Transaction.

40. The Information Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to Unitholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to Unitholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Partnership's Unitholders.

41. Thus, while the Proposed Transaction is not in the best interests of Sprague, Plaintiff or Partnership Unitholders, it will produce lucrative benefits for the Partnership's officers and directors.

*The Materially Misleading and/or Incomplete Information Statement*

42. On July 7, 2022, the Sprague Board and Hartree caused to be filed with the SEC a materially misleading and incomplete Information Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Partnership Unitholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

43. Specifically, the Information Statement fails to disclose material information concerning the process conducted by the Partnership and the events leading up to the Proposed Transaction. In particular, the Information Statement fails to disclose:

   a. The specific reason no market check for potentially interested third parties was conducted by the Board or by anyone on the Board's behalf;

   b. Whether the confidentiality agreements entered into by the Partnership with Hartree differed from any other unnamed confidentiality agreement entered into between the Partnership and potentially interested third parties (if any), and if so, in all specific manners;

   c. Specific information as to why a majority-of-the-minority vote was not required despite Hartree owning 74.5% of the outstanding units;

   d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Partnership and potentially interested third parties throughout the sales process, including Hartree, would fall away; and

   e. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to Unitholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to Unitholders. concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Partnership Unitholders.

*Omissions and/or Material Misrepresentations Concerning Sprague and Hartree's Financial Projections*

44.     The Information Statement fails to provide material information concerning financial projections for Sprague and Hartree provided by Sprague and Hartree management to the Board and Jefferies and relied upon by Jefferies in their analyses.  The Information Statement discloses management-prepared financial projections for the Partnership which are materially misleading.

45.     The Information Statement should have, but fails to provide, certain information in the projections that Sprague and Hartree management provided to the Board and Jefferies.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the partnership's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

46.     With regard to *Certain Financial Projections* for Sprague prepared by Sprague management, the Information Statement fails to disclose material line items for all projection metrics utilized in Jefferies' analyses:

   a. With regard to the *Management Base* Case:

      i. The specific annual growth or decline rates across business segments, commodities, and products used for this analysis;

      ii. Additionally, the Information Statement fails to provide a complete definition of metrics used to calculate Adjusted EBITDA for years 2022E-2026E;

      iii. The Information Statement fails to provide the inputs and assumptions

      used to determine costs will be reduced by 1.5 million in 2023;

   iv. The assumed tax rate for the Partnership for years 2022E-2026E;

   v. The specific definition used as well as the underlying inputs, metrics, and assumptions used to calculate Distributable Cash Flow (DCF); and

   vi. The specific definition used as well as the underlying inputs, metrics, and assumptions used to calculate Distributable Cash Flow (Distribution).

 b. With regard to the *Risk Growth* Case:

   i. The inputs, metrics, and assumptions used to determine Risk amount ranges of 25% to 50%;

   ii. The specific project-level growth opportunities analyzed as well as each of their respective risk levels;

   iii. Additionally, the Information Statement fails to provide a complete definition of metrics used to calculate Adjusted EBITDA for years 2022E-2026E;

   iv. The assumed tax rate for the Partnership for years 2022E-2026E;

   v. The specific definition used as well as the underlying inputs, metrics, and assumptions used to calculate Distributable Cash Flow (DCF); and

   vi. The specific definition used as well as the underlying inputs, metrics, and assumptions used to calculate Distributable Cash Flow (Distribution).

47. The Information Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48.     The Information Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the alternative cases of projections rely.

49.     This information is necessary to provide Plaintiff in his capacity as a Partnership stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50.     Without accurate projection data presented in the Information Statement, Plaintiff is unable to properly evaluate the Partnership's true worth, the accuracy of Jefferies' financial analyses, or make an informed decision whether to tender his units in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Information Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Jefferies*

51.     In the Information Statement, Jefferies describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52.     With respect to the *Selected Public Companies Analysis* of Sprague, the Information Statement fails to disclose the following:

   a. The exact 2022 Enterprise Value/EBITDA for each company compared;

   b. The exact 2023 Enterprise Value/EBITDA for each company compared;

   c. The inputs, metrics, and assumptions used to determine a multiple reference

        range for 2022 Estimated Enterprise Value/ Adjusted EBITDA of 10.0x – 11.5x with respect to the *Midpoint of 2022 Guidance*;

d. The inputs, metrics, and assumptions used to determine a multiple reference range for 2022 Estimated Enterprise Value/ Adjusted EBITDA of 10.0x – 11.5x with respect to the *Management Base Case*;

e. The inputs, metrics, and assumptions used to determine a multiple reference range for 2022 Estimated Enterprise Value/ Adjusted EBITDA of 10.0x – 11.5x with respect to the *Risk Growth Case*;

f. The inputs, metrics, and assumptions used to determine a multiple reference range for 2023 Estimated Enterprise Value/ Adjusted EBITDA of 9.5x – 11.0x with respect to the *Management Base Case*; and

g. The inputs, metrics, and assumptions used to determine a multiple reference range for 2023 Estimated Enterprise Value/ Adjusted EBITDA of 9.5x – 11.0x with respect to the *Risk Growth Case*.

53. With respect to the *Discounted Cash Flow Analysis* of Sprague, the Information Statement fails to disclose the following:

a. The Terminal exit values calculated for the Partnership;

b. The inputs, metrics, and assumptions used to determine a selected exit multiple range of 9.5x – 11.5x;

c. The inputs, metrics, and assumptions used to determine a discount rate range of 7.8% - 8.8%;

d. The weighted average cost of capital for the Partnership;

e. The range of illustrative enterprise values calculated for the Partnership;

  f. The specific present value of deferred consideration related to the acquisition of certain refined product terminal assets from Carbo Industries, Inc.; and

  g. The number of fully diluted outstanding Common Units of the Partnership.

54. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

55. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a Unitholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Sprague Unitholder. As such, the Board has violated the Exchange Act by failing to include such information in the Information Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

56. Plaintiff repeats all previous allegations as if set forth in full herein.

57. Defendants have disseminated the Information Statement with the intention of soliciting unitholders, including Plaintiff, to vote in favor of the Proposed Transaction.

58. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC]

may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

59. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

60. The Information Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Information Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

61. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

62. The Individual Defendants were at least negligent in filing a Information Statement that was materially misleading and/or omitted material facts necessary to make the Information Statement not misleading.

63. The misrepresentations and omissions in the Information Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his units in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the unitholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

64. Plaintiff repeats all previous allegations as if set forth in full herein.

65. The Individual Defendants were privy to non-public information concerning the Partnership and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Information Statement was materially misleading to Plaintiff in his capacity as a Partnership unitholder.

66. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Partnership in the Information Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Information Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed

the Information Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

67. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Sprague's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Partnership, and that the Information Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Information Statement and are therefore responsible and liable for the misrepresentations contained herein.

68. The Individual Defendants acted as controlling persons of Sprague within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Partnership, the Individual Defendants had the power and authority to cause Sprague to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Sprague and all of its employees. As alleged above, Sprague is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act disseminate

a Information Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 26, 2022                               **BRODSKY & SMITH**

By:  */s/ Evan J. Smith*
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*